MARKLEY v OAK HEALTH CARE INVESTORS OF COLDWATER, INC

Docket No. 230056. Submitted November 5, 2002, at Grand Rapids. Decided February 7, 2003, at 9:00 A.M. Leave to appeal sought.

Robert Markley, Sr., as personal representative of the estate of Sally Markley, brought a wrongful death action in the Branch Circuit Court against Oak Health Care Investors of Coldwater, Inc., and Leona Elliott, L.P.N, alleging medical malpractice. The defendants failed to respond to the complaint with an affidavit of meritorious defense as required by MCL 600.2912e, and the court, Michael H. Cherry, J., granted partial summary disposition in favor of the plaintiff. A trial was conducted to determine the amount of damages, and the jury awarded the plaintiff $300,000 in total wrongful death damages, to which was added prejudgment interest and taxable costs for a total of $354,133. The defendants requested that the judgment be reduced to reflect the plaintiff's earlier settlement with Community Health Center of $220,000 that was reached in a separate action. The court ruled that the amendment of MCL 600.2925d, which until the enactment of tort reform legislation in 1995 had expressly allowed a setoff against a judgment predicated on an earlier settlement payment, abrogated any common-law right to a setoff and therefore the defendants were not entitled to a setoff. The court held that although the law now provides for the apportionment of fault, that could not form the basis for a reduction in the judgment because the defendants failed to timely file notice of nonparty fault and thus the issue was not before the jury. The defendants appealed.

The Court of Appeals *held*:

1. Although joint liability has been abolished in most cases, joint and several liability still exists in medical malpractice cases where the plaintiff is without fault, such as in this case.

2. The defendants and Community Health Center produced a single injury and are in theory jointly and severally liable even though they were sued in separate actions.

3. The settlement discharged Community Health Center from liability to the defendants for contribution.

4. Even if the jury had been given the opportunity to allocate fault in some degree to Community Health Center, there would be

no reduction of the verdict in this case between the defendants and the plaintiff because liability is joint and several and the plaintiff could recover the full amount from the defendants.

5. The principle of one recovery for one injury and the common-law rule of setoff, in the context of joint and several liability cases, continue to be the law in Michigan. The defendants are entitled to a setoff of $220,000 against the $300,000 verdict and must pay only $80,000, plus interest and costs thereon.

6. The court properly assessed prejudgment interest on the entire award. On remand, the interest award must be reduced to reflect the judgment of $80,000 against the defendants.

Reversed and remanded.

1. TORTS — JOINT AND SEVERAL LIABILITY.

The principle that a plaintiff is entitled to only one recovery for his injury and the common-law rule of setoff, in the context of joint and several liability cases, continues to be the law in Michigan following the tort reform legislation of 1995 (1995 PA 161; MCL 600.6304[6][a]).

2. TORTS — MEDICAL MALPRACTICE — JOINT AND SEVERAL LIABILITY.

Although the Legislature has abolished joint liability in most circumstances, joint and several liability still exists in medical malpractice cases where the plaintiff is without fault (MCL 600.2956, 600.6304[6][a]).

3. NEGLIGENCE — JOINT TORTFEASORS.

Where the negligence of two or more persons produces a single, indivisible injury, the principles of joint and several liability, where applicable, provide that the tortfeasors are jointly and severally liable despite there being no common duty, common design, or concert of action.

4. STATUTES — COMMON LAW.

The repeal of a statute generally revives the common-law rule dealing with the subject matter as it was before the statute was enacted.

5. STATUTES — COMMON LAW.

The Legislature will be found to have intended that a statute supersede and replace the common law dealing with the subject matter where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates limitations and exceptions.

*Worsham, Victor & Ahmad, P.C.* (by *Richard B. Worsham*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), for the defendants.

Before: MURPHY, P.J., and SAWYER and R. J. DANHOF*, JJ.

MURPHY, P.J. In this wrongful death action involving medical malpractice, defendants appeal as of right from a $354,133 judgment entered in favor of plaintiff following a jury trial to determine damages. Defendants maintain that the judgment should have been reduced to reflect plaintiff's earlier settlement with Community Health Center (Community) that was reached in a separate action. In the alternative, defendants argue that the statutory limit on noneconomic damages in a medical malpractice action, MCL 600.1483, should have been applied by the trial court to cap plaintiff's total recovery. Defendants also take issue with the trial court's award of prejudgment interest. We reverse and remand.

I. UNDERLYING FACTS AND PROCEDURAL HISTORY

The facts of this case are not in dispute and are set forth in this Court's earlier opinion in *Markley v Oak Health Care Investors of Coldwater, Inc,* unpublished opinion per curiam of the Court of Appeals, issued April 6, 2001 (Docket No. 220494) (*Markley I*). In short, plaintiff's decedent was admitted to Community where her eventual misdiagnosis resulted in a large-bowel resection and left-leg amputation in 1994. The decedent's family cared for her immediately after her release from Community, but she was eventually

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

admitted to a nursing home owned and operated by defendant Oak Health Care Investors of Coldwater, Inc. (OHC). While at the nursing home, OHC's nurse practitioner increased the prescribed infusion rate for decedent's intravenous feeding, causing her to go into respiratory distress and, shortly thereafter, die of cardiac arrest.

Plaintiff sued Community, which settled with plaintiff for $460,000; $220,000 of that amount was allocated to "the legal theory arising from the Wrongful Death of [the decedent]" and $240,000 was allocated to "the legal theory arising from the conscious pain and suffering from the injuries to [the decedent] during her lifetime." Before the settlement was reached, plaintiff sued defendants for the same wrongful death in the case at bar.[1] Defendants failed to respond to plaintiff's complaint with an affidavit of meritorious defense as required by MCL 600.2912e, and partial summary disposition was granted to plaintiff pursuant to MCR 2.116(C)(9) and (10). A trial was held solely to determine the amount of damages.

The jury awarded plaintiff $300,000 in total wrongful death damages, to which was added prejudgment interest and taxable costs. Defendants had moved to file notice of nonparty fault shortly before trial, and the trial court apparently denied the motion on the basis of defendants' failure to timely file pursuant to

---

[1] Plaintiff also sued defendants, in yet a third separate action arising out of decedent's death and in the role as assignee of Community, for indemnification with regard to the settlement payment. Although the claim succeeded in the trial court, this Court reversed that award because plaintiff had originally sued Community for "active" negligence, thereby negating any claim for indemnification; our Supreme Court denied plaintiff's application for leave to appeal. *Markley I, supra*; lv den 465 Mich 944 (2002).

MCR 2.112(K). The jury did not consider the fault of anyone other than defendants.

## II. TRIAL COURT'S RULINGS ON LEGAL ISSUES

The trial court found the statutory damage cap, MCL 600.1483, to be unconstitutional as violative of the right to trial by jury. With regard to the requested $220,000 setoff against the $300,000 verdict, the trial court ruled that the amendment of MCL 600.2925d, which until the enactment of 1995 tort reform legislation had expressly allowed a setoff against a judgment predicated on an earlier settlement payment, abrogated any common-law right to a setoff; therefore, defendants were not entitled to any setoff. The trial court ruled that the law now provided for the apportionment of fault; however, this could not form the basis for a reduction in the judgment because defendants failed to timely file notice of nonparty fault, and thus the issue was not before the jury. Regarding prejudgment interest, which was awarded on the entire $300,000 verdict, the trial court ruled that there was no authority requiring a plaintiff to apportion between past and future damages for purposes of computing interest. We find that the only issues necessary for us to resolve concern setoff and prejudgment interest.

## III. STANDARD OF REVIEW

The parties agree, and we also concur, that the issues presented to us involve only questions of law. This Court reviews questions of law de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

IV. ANALYSIS AND HOLDING

Although the parties and the trial court framed the issues, in part, with reference to principles concerning contribution and allocation of fault, the heart of the question that we must answer is whether the common-law rule of setoff survived 1995 tort reform legislation in situations still requiring the application of joint and several liability.

A. COMMON-LAW RULE OF SETOFF

In *Thick v Lapeer Metal Products*, 419 Mich 342, 348 n 1; 353 NW2d 464 (1984), our Supreme Court noted the common-law rule "that where a negligence action is brought against joint tortfeasors, and one alleged tortfeasor agrees to settle his potential liability by paying a lump sum in exchange for a release, and a judgment is subsequently entered against the non-settling tortfeasor, the judgment is reduced *pro tanto* by the settlement amount." See also *Larabell v Schuknecht*, 308 Mich 419, 423; 14 NW2d 50 (1944); *Cooper v Christensen*, 29 Mich App 181, 183-184; 185 NW2d 97 (1970).

The common-law rule of setoff is predicated on the principle that a plaintiff is entitled to only one recovery for his injury. *Great Northern Packaging, Inc v Gen Tire & Rubber Co*, 154 Mich App 777, 781; 399 NW2d 408 (1986). The *Great Northern* panel, rejecting a claim by the plaintiff that the trial court erred in allowing a setoff against a verdict premised on a mediation settlement involving a separate tortfeasor, stated:

> As a general rule, only one recovery for a single injury is allowed under Michigan law. The amount that a plaintiff recovers from one defendant is set off against a subsequent verdict obtained against a codefendant. *Stitt v Mahaney*, 403 Mich 711; 272 NW2d 526 (1978). See also *Hall v Citizens Ins Co of America*, 141 Mich App 676; 368 NW2d 250 (1985). [*Great Northern, supra* at 781.]

The roots of the "one injury, single recovery" principle are found in *Verhoeks v Gillivan*, 244 Mich 367, 371; 221 NW 287 (1928), wherein our Supreme Court, adopting the "American" rule and quoting 58 LRA 410, p 430; 27 ALR 805, stated:

> "[T]he American cases offer equitable and convincing reasons for their course, viz.: The liability of tort-feasors for a joint tort is joint and several. The injured party has the right to pursue them jointly or severally at his election, and recover separate judgments; but, the injury being single, he may recover but one compensation. Therefore, he may elect *de melioribus damnis* and issue his execution accordingly, but if he obtains only partial satisfaction he has not precluded himself from proceeding against another cotort-feasor; his election of the first judgment concluding him only as to the amount he may receive, and whatever has been paid must apply *pro tanto* upon his further recovery."

Assuming here for the moment that defendants are jointly and severally liable for decedent's wrongful death and that the common-law rule of setoff is applicable, it is clear that the $300,000 verdict would be reduced by the $220,000 settlement payment made by Community to plaintiff.

### B. JOINT AND SEVERAL LIABILITY

Under the current statutory scheme, MCL 600.2956 abolished joint liability in most circumstances. How-

ever, joint and several liability still exists in medical malpractice cases where the plaintiff is without fault, such as the present case. MCL 600.6304(6)(a).[2]

Under established principles of joint and several liability, where the negligence of two or more persons produces a single, indivisible injury, the tortfeasors are jointly and severally liable despite there being no common duty, common design, or concert of action. *Watts v Smith*, 375 Mich 120, 124-125; 134 NW2d 194 (1965); *Maddux v Donaldson*, 362 Mich 425, 433; 108 NW2d 33 (1961). Here, with regard to wrongful death, Community and defendants, through successive negligent acts, produced a single, indivisible injury, i.e., the death of plaintiff's decedent. Although plaintiff filed separate lawsuits, Community and defendants are in theory jointly and severally liable for wrongful death, and we shall treat them as such, otherwise a plaintiff in a similar situation could avoid the effect of our ruling today by simply suing joint tortfeasors in separate actions. We shall effectively treat defendants as if they had been sued jointly with Community by plaintiff in a single action.

### C. CONTRIBUTION AND ALLOCATION OF FAULT

We find it necessary, in light of some apparent confusion in the trial court, to distinguish setoff from other theories and principles not implicated in the present case. With regard to contribution, the settlement discharged Community from liability to defen-

---

[2] MCL 600.6304, which requires the allocation of fault among tortfeasors, provides, in pertinent part: "(6) If an action includes a medical malpractice claim . . . , 1 of the following applies: (a) If the plaintiff is determined to be without fault under subsections (1) and (2), the liability of each defendant is joint and several . . . ."

dants for contribution. MCL 600.2925d(b). We are not dealing with contribution because contribution affixes the rights as between joint tortfeasors and not as between one tortfeasor and a plaintiff. MCL 600.2925a. With joint and several liability, each tortfeasor is liable for the full amount of damages. As noted by this Court in *Smiley v Corrigan*, 248 Mich App 51, 55; 638 NW2d 151 (2001):

> As part of its tort reform legislation, the Michigan Legislature abolished joint and several liability and replaced with "fair share liability." The significance of the change is that each tortfeasor will pay only that portion of the total damage award that reflects the tortfeasor's percentage of fault. Accordingly, if the factfinder concludes that a defendant is ten percent at fault for a plaintiff's injuries and awards the plaintiff $100,000 in damages, the defendant will be responsible only for $10,000, *not the entire damage award, as would have been the case under the former joint and several liability system.* [Emphasis added.]

Defendants are not seeking contribution from Community, but merely a setoff, predicated on the settlement payment, against the $300,000 verdict.

For the same reason, with regard to allocation of fault,[3] even if the jury had been given the opportunity to allocate fault in some degree to Community, it would not have resulted in a reduction of the $300,000 verdict as between defendants and plaintiff because liability is joint and several and plaintiff would have every legal right to recover the full amount from defendants despite the possibility that defendants would pay more than their fair share. Support for this is found in MCL 600.6304(4), wherein it

---

[3] We note that allocation of fault under MCL 600.6304(4) does not even appear to be implicated here, where the statute provides that "[l]iability in an action to which this section applies is several only and not joint."

is stated that "[e]xcept as otherwise provided in subsection (6) [applicable here], a person shall not be required to pay damages in an amount greater than his or her percentage of fault . . . ." Thus, there would be no basis to reduce the judgment even if defendants jumped through the procedural hoops regarding allocation of fault.[4]

### D. MCL 600.2925d

MCL 600.2925d currently provides:

If a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons for the same injury or the same wrongful death, both of the following apply:

(a) The release or covenant does not discharge 1 or more of the other persons from liability for the injury or wrongful death unless its terms so provide.

(b) The release or covenant discharges the person to whom it is given from all liability for contribution to any other person for the injury or wrongful death.

Before the 1995 tort reform legislation amended the statute, 1995 PA 161, this same statute included a subsection that provided that a settlement and release

---

[4] The nonapplicability of contribution and allocation of fault here parallels a discussion in *Rittenhouse v Erhart*, 424 Mich 166, 181; 380 NW2d 440 (1985), wherein Justice BRICKLEY stated:

Nor was the fault of the settlers in causing plaintiffs' damages an issue as to the nonsettling tortfeasors, as the settlements guaranteed that the settlers were immune from contribution from the trial defendants. MCL 600.2925d; MSA 27A.2925(4). Moreover, it would not serve the nonsettling defendants' goal of limiting their liability to attempt to show that the settlers were more the cause of the plaintiffs' injuries than they. This is so because if the nonsettler was found to be negligent and the cause of the plaintiff's injuries at all, then he would be liable for all of the plaintiff's injuries . . . no matter how much negligence was attributable to the settlers.

"reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant or to the extent of the amount of the consideration paid for it, whichever amount is the greater." MCL 600.2925d, added by 1974 PA 318 (see historical and statutory notes to current version of the statute). This language, which represented a codification of the common-law rule of setoff, *Thick*, *supra* at 348 n 1, was apparently deleted because the tort reform legislation, for the most part, abolished joint and several liability in favor of allocation of fault or several liability. MCL 600.2956 and 600.6304. There would be no need for a setoff because the tortfeasor-defendant not involved in the settlement would necessarily be responsible for an amount of damages distinct from the settling defendant on the basis of allocation of fault. Therefore, a settlement payment cannot be deemed to constitute a payment toward a loss included in a later damage award entered against the nonsettling tortfeasor. There exists little danger, in cases of several liability, that a plaintiff will receive recovery beyond the actual loss.[5]

---

[5] In *Gerling Konzern Allgemeine Versicherungs AG v Lawson*, 254 Mich App 241, 247-248; 657 NW2d 143 (2002), this Court stated:

> For purposes of settlement, a party must assess its pro rata share of liability in arriving at the settlement amount, that is, the amount for which it could be found liable if the action were to proceed to trial. Under the 1995 tort reform legislation, plaintiff [suing for contribution]was not exposed to liability beyond its prorata share; therefore, plaintiff's decision to voluntarily pay pursuant to a settlement must be attributed to its own assessment of liability based on its insured's negligence. Plaintiff's claim for contribution based on its allegation that it made a payment greater than its pro rata share thus cannot be sustained.

Likewise, a severally liable, nonsettling tortfeasor cannot seek the benefit of a setoff because the settling tortfeasor made payment attributed only to its own assessment of fault.

We must answer the question whether the amendment of § 2925d revived the common-law rule of setoff in joint and several liability cases, or whether the rule is abolished in its entirety.

### E. TORT REFORM LEGISLATION AND THE AMENDMENT OF SECTION 2925d

There are two competing legal principles at work in trying to resolve whether the amendment of § 2925d abrogated the common-law rule of setoff. First, there is the general rule that "[t]he repeal of a statute revives the common-law rule as it was before the statute was enacted." *People v Reeves*, 448 Mich 1, 8; 528 NW2d 160 (1995). Second, there exists the rule that "where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter." *Millross v Plum Hollow Golf Club*, 429 Mich 178, 183; 413 NW2d 17 (1987). The comprehensive tort reform legislation, however, simply no longer addressed the issue of setoff in any manner; it is silent. Moreover, the tort reform legislation prescribed in detail a course of conduct regarding allocation of fault and several liability, not joint and several liability. Therefore, joint and several liability principles presumptively remained intact, where, as here, joint and several liability was not abrogated by the Legislature. With tort reform and the switch to several liability, it is logical to conclude that common-law setoff in joint and several liability cases remained the law, where the new legislation was silent, where application of the common-law rule does not conflict with any cur-

rent statutes concerning tort law, and where a plaintiff is conceivably overcompensated for its injury should the rule not be applied. Considering the general nature and tone of tort reform legislation, we conclude that the Legislature did not intend to allow recovery greater than the actual loss in joint and several liability cases when it deleted the relevant portion of § 2925d, but instead intended that common-law principles limiting a recovery to the actual loss would remain intact.

Here, a jury determined that plaintiff was entitled to $300,000 in total damages for wrongful death; however, plaintiff already received $220,000 for wrongful death. Without reduction of the jury verdict, plaintiff receives $520,000[6] in compensation for a $300,000 harm. If we were to allow such a recovery, we would defeat the principle underlying common-law setoff, that being that a plaintiff can have but one recovery for an injury. We find that the principle of one recovery and the common-law rule of setoff, in the context of joint and several liability cases, continue to be the law in Michigan.

### F. CAP ON NONECONOMIC DAMAGES IN MEDICAL MALPRACTICE CASES

The parties agree that should MCL 600.1483 be applicable, the total amount of damages recoverable by plaintiff could not exceed $328,700. Because defendants are receiving a setoff of $220,000 against the $300,000 verdict, they must only pay $80,000 to plaintiff, plus interest and taxable costs thereon. If the $220,000 settlement payment from the first suit is

---

[6] We are not considering the effect of the medical malpractice damage cap for purposes of this illustration.

added to the $80,000 from the second suit, the total amount of noneconomic damages recovered or recoverable by plaintiff is under $328,700; therefore, there is no reason to address the damage cap. Defendants make no argument that the $240,000 settlement payment for conscious pain and suffering should be considered in determining the cap issue, nor that they should receive any setoff for this settlement payment.

### G. PREJUDGMENT INTEREST

Finally, defendants challenge the trial court's assessment of prejudgment interest because the jury's award failed to delineate between past and future damages. Under MCL 600.6013, prejudgment interest is not allowed on future damages. However, nothing in the verdict form indicated that the damages were not present damages, and defendants devised the verdict form. Defendants' argument that the burden should be placed on plaintiff to show which portion of the award was for future damages is without merit because MCL 600.6013 is remedial in nature and thus should be liberally construed in favor of the prevailing party. See, e.g., *Southfield Western, Inc v Southfield*, 206 Mich App 334, 339; 520 NW2d 721 (1994).

In an analogous case, this Court in *Hammack v Lutheran Social Services of Michigan*, 211 Mich App 1, 10; 535 NW2d 215 (1995), rejected the defendants' argument that there was error where the verdict form did not distinguish between past and future damages, thereby making it impossible to determine what portion of the damages should be reduced to present value. The *Hammack* panel ruled that because the defendants did not request a verdict form

distinguishing damages, they could not raise the claim of error on appeal. *Id.*

Likewise, we find no error in the trial court's award of prejudgment interest on the entire amount; however, because we reduced the amount of the judgment to $80,000 against defendants pursuant to common-law setoff, the award of interest shall be reduced accordingly.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.