*29 HATHAWAY, J.
(dissenting). I generally agree with the majority that when a trier of fact determines that a plaintiff in a medical malpractice case is not comparatively negligent, the common-law setoff rule applies. However, I disagree with the manner in which the majority applies this rule because it does so in a fashion that is contrary to the rule’s purpose. Because today’s decision departs from the common-law setoff rule, I respectfully dissent.
For many years, the rule in this state was that concurrent tortfeasors were held to be jointly and severally liable. Joint and several liability operated to place the full burden of the injustice on a tortfeasor, rather than on the injured party.[1] When a defendant is jointly and severally liable, that defendant is liable for all the injured party’s damages, including damages for injury caused by a codefendant or a nonparty, in order to ensure that an injured party is fully compensated.[2]
A corollary of joint and several liability is the common-law setoff rule.[3] Common-law setoff is grounded in the principle that an injured party is entitled to only one recovery for a single, indivisible injury and precludes an injured party from receiving a double recovery.[4] Thus, historically, when an injured party suffered a single, indivisible injury as a result of the negligent conduct of two or more tortfeasors, any amount paid by a settling defendant was “set off” or subtracted from the verdict awarded by the trier of *30 fact.[5] The common-law application of setoff carried out the purpose of the rule: the injured party was fully compensated, but not overcompensated.[6]
The common-law setoff rule was codified in former MCL 600.2925d by 1974 PA 318 and this statutory version of the setoff rule was applied in the same manner as it was at common law in instances in which the defendants were jointly and severally liable. However, statutory setoff was subsequently eliminated by 1995 PA 161, along with joint and several liability for virtually all tort claims.[7] Because no relevant statute currently addresses setoff, the question arises whether the Legislature intended common-law setoff to apply to the limited categories of tort claims for which joint and several liability was retained.[8] Although factually dissimilar to this case, Kaiser v Allen, 480 Mich 31; 746 NW2d 92 (2008), provides guidance in answering this question.
Kaiser addressed the issue of whether the common-law setoff rule applies to claims against owners and operators of motor vehicles when vicarious liability is statutorily imposed. In holding that the common-law setoff rule applies to such cases, this Court explained:
The common-law setoff rule is based on the principle that a plaintiff is only entitled to one full recovery for the same injury. An injured party has the right to pursue multiple tortfeasors jointly and severally and recover separate judgments; however, a single injury can lead to only a single compensation.
*31 ... Allowing plaintiff to recover the entire verdict against Allen [vehicle owner] and to retain all the proceeds from the settlement with [the vehicle’s operator] would allow the plaintiff to recover four times more than the jury determined plaintiff should be awarded for his injuries. The Legislature did not intend that a plaintiff be awarded damages greater than the actual loss in vicarious-liability cases, resulting in a double recovery. The common-law setoff rule should be applied to ensure that a plaintiff only recovers those damages to which he or she is entitled as compensation for the whole injury... .
To the extent that joint and several liability principles have not been abrogated by statute, they remain intact, and the common-law setoff rule remains the law in Michigan with regard to vehicle-owner vicarious-liability cases.[9]
Thus, Kaiser recognized that when a party suffers a single, indivisible injury as the result of the conduct of multiple tortfeasors, the injured party is entitled to be made whole. This means that the injured party is entitled to be fully compensated, but not overcompensated. I see no reason why the principles set forth in Kaiser should not be extended to the category of medical malpractice claims that also retain joint and several liability.[10]
Moreover, I believe that in Markley v Oak Health Care Investors of Coldwater, Inc, 255 Mich App 245, 256-257; 660 NW2d 344 (2003), the Court of Appeals correctly reasoned that
*32 [w]ith tort reform and the switch to several liability, it is logical to conclude that common-law setoff in joint and several liability cases remained the law ... where application of the common-law rule does not conflict with any current statutes concerning tort law, and where a plaintiff is conceivably overcompensated for its injury should the rule not be applied.
Thus, Markley correctly held that in medical malpractice cases that retain joint and several liability, the common-law setoff rule applies. However, with that said, if the common-law setoff rule is to be imposed in the absence of statutory authority, it must be applied in the same manner and for the same purpose as it was at common law. Otherwise, the common-law setoff rule is not being applied; instead, an entirely new rule is created.
The undisputed historical purpose of the common-law setoff rule was to preclude a plaintiff from being overcompensated for a single, indivisible injury.[11] That is its only goal. The common-law setoff rule accomplished this goal by subtracting any settlement amount for that injury from the trier of fact’s determination of the entire amount of the injured party’s damages. When applying the common-law setoff rule to medical malpractice cases under the current statutory scheme, the goal of preventing overcompensation remains the same.
In analyzing whether a medical malpractice plaintiff has been overcompensated, we must be mindful of the so-called “tort reform” liability statutes that contain measures to preclude a plaintiff from receiving overcompensation in many regards. For example, the fact-finder is required to separate all economic damages from noneconomic ones,[12] with future damages item *33 ized on a year-by-year basis[13] and any future damages reduced to present cash value.[14] Economic damages are subject to statutory setoff for payments made by a collateral source.[15] Payment for future damages exceeding $250,000 may be satisfied by the purchase of an annuity contract.[16] Noneconomic damages awarded at trial are subject to two different limitations based on the nature of the injury.[17] Each of these measures serves to reduce the amount that an injured party may ultimately receive in a judgment entered as a result of a verdict rendered in his or her favor. These measures greatly reduce the possibility that a medical malpractice plaintiff can be overcompensated.
To determine whether a medical malpractice plaintiff has actually been overcompensated, a multistep analysis is required that considers all the principles discussed above. The first step is to consider whether the plaintiff was comparatively negligent. If the plaintiff was comparatively negligent, a defendant’s liability is several and, as such, the defendant is only responsible for his or her pro rata share of the plaintiffs damages.[18] In these instances, the issue of setoff is irrelevant because there is no possibility of the plaintiff being overcompensated. On the other hand, if the jury determines that the plaintiff was not comparatively negligent, the court must determine whether the plaintiff is being overcompensated and, if so, the common-law setoff rule is applicable. In these instances, after a verdict has been rendered, any settlement amounts paid for damages *34 arising from that single, indivisible injury must be set off in the same manner and for the same purpose as at common law — to prevent overcompensation. Thus, settlement amounts should be subtracted from the amount that the trier of fact determines is the full amount that the plaintiff is entitled to recover so that the plaintiff is made whole, but not overcompensated.[19]
The majority opines that the verdict must first be reduced by the applicable limitation on noneconomic damages;[20] then, only after the verdict is reduced to that amount, is any settlement set off or subtracted from the reduced award. Additionally, under the majority’s analysis, the entire amount of the settlement proceeds must be set off from the noneconomic-damages portion of the plaintiffs adjusted net verdict, without any consideration of whether all the settlement proceeds were intended to compensate the plaintiff for noneconomic damages. I disagree with this analysis.
The majority applies setoff in a manner that is at odds with the common-law rule, which was used to prevent a plaintiff from receiving a double recovery or overcompensation for a single, indivisible injury. The majority seemingly disregards the obvious — the trier of fact determines the total amount of a plaintiffs damages, and only when a plaintiff receives more than that amount as compensation is the plaintiff overcompensated. A plaintiff is not overcompensated when he or she receives less than the trier of fact’s determination of the amount that is required to make him or her whole. The goal of the common-law setoff rule is merely to *35 prevent overcompensation; it is not to further under-compensate the plaintiff. Unfortunately, the majority’s method of applying this rule fails to achieve the goal of common-law setoff. While the majority asserts that it is applying “common-law setoff,” it instead creates a new rule that bears little resemblance to the common-law setoff rule or its underlying purpose. It is axiomatic that if a common-law rule is to be used, it should be applied in the manner and for the purposes that it was intended at common law. To do otherwise defies logic and does nothing more than judicially create a new rule in order to fill what the creator of the new rule perceives to be a statutory void.
The majority counters that its manner of applying the common-law setoff rule is mandated by the language of MCL 600.1483(1), which sets forth the limitations on damages.[21] The majority claims that the limitations in this subsection preclude any recovery above *36 that amount regardless of whether an award of damages by a trier of fact is involved. I disagree. The majority reaches its conclusion by myopically focusing on a few selected words of MCL 600.1483(1), rather than the entirety of that subsection, and then adds language to that subsection that does not exist. It argues that because MCL 600.1483(1) uses the terms “total amount,” “recoverable,” and “shall not exceed,” recoverable noneconomic losses “necessarily include[] recovery through settlements, jury verdicts, or arbitration.”[22] However, contrary to the majority’s position, subsection (1) makes no reference to settlements at all. Moreover, when MCL 600.1483 is read as a whole and in conjunction with MCL 600.6304, as was intended, it is clear from the text of those sections that the limitations on damages are only intended to be applied to awards of damages, not settlements.
The majority’s analysis ignores the full language of MCL 600.1483(2), which requires the “trier of fact” to *37 segregate the economic and noneconomic elements of damages. This language logically means that only awards by a trier of fact are within the scope of the subsection, not settlements, which do not involve a trier of fact. More importantly, MCL 600.6304(5) mandates that only following an “award of damages” is the court to reduce that “award” of noneconomic damages to the appropriate limitation found in MCL 600.1483. MCL 600.6304(5) provides:
In an action alleging medical malpractice, the court shall reduce an award of damages in excess of 1 of the limitations set forth in section 1483 to the amount of the appropriate limitation set forth in section 1483. The jury shall not be advised by the court or by counsel for either party of the limitations set forth in section 1483 or any other provision of section 1483.
However, no comparable language can be found allowing a court to reduce awards by the amount of a settlement. Thus, two logical conclusions can be drawn from the actual text of this provision. First, the Legislature did not intend to preclude a trier of fact from determining the full amount of recovery that is necessary to make the plaintiff whole and, second, the Legislature only intended awards by a trier of fact to be reduced to the noneconomic-damages limitation. If the Legislature had intended the interpretation adopted by the majority, it would be logical to assume that it would have made some reference to settlement somewhere in the statutory scheme. Instead, the statutory scheme is silent with respect to settlements. While the absence of such language does not preclude common-law setoff, the common-law setoff rule is only applicable when overcompensation is involved. When there is no overcompensation, the common-law setoff rule does not apply. In the absence of statutory authority, and in situations *38 where the common-law setoff rule does not apply, there is simply no basis to apply the reduction in the manner that the majority requires.
In this case, a jury determined that as a result of defendant Dr. Tuma’s negligence, plaintiff Ms. Velez’s left leg had to be amputated. The jury found that defendant was both professionally negligent and the proximate cause of plaintiffs injuries. The jury returned a verdict in plaintiffs favor that included $124,831.86 in economic damages and $1.4 million in noneconomic damages for a total verdict of $1,524,831. It is the total verdict that constitutes full recovery and makes plaintiff whole. Only if she receives more than this total amount would she be receiving a double recovery or overcompensation. Plaintiff is clearly not receiving a double recovery or overcompensation because the trial court reduced the amount the jury determined would make her whole to $394,200.[23] The trial court reached this judgment amount by first subtracting the settling codefendants’ payment to plaintiff ($195,000) from the jury’s total verdict ($1,524,831) and then reducing the net verdict ($1,329,831) to the amount required under MCL 600.6303 (in this instance, the noneconomic-damages limitation was $394,200). The Court of Appeals affirmed this equation. I agree with the trial court and the Court of Appeals, and the majority errs by failing to *39 take this approach. Rather than applying the common-law setoff rule, the majority creates a new rule and simply calls it “common-law setoff.” I cannot agree with this approach.
My final concern regarding the majority’s decision is that it concludes that the entire amount of plaintiff’s prior settlement with Tuma’s codefendants must be set off or subtracted from plaintiffs noneconomic-damages award. I find this action considerably troubling because it ignores the actual agreement of the settling parties. The settlement agreement between plaintiff and the settling codefendants is contained in a document entitled “Covenant Not to Sue Agreement.” The total settlement amount was $195,000, and the agreement specifically states the settlement is for all the damages including economic, noneconomic, costs, attorney fees, and interest. This settlement was intended to resolve all of plaintiffs claims with the settling codefendants. Pursuant to the unambiguous terms of the agreement, the amount of $195,000 was not allocated into any specific category of damages. As such, there is no logical way to conclude that all the settlement proceeds were for noneconomic damages. Despite this, the majority ignores the terms of the agreement and instead assumes that the entire settlement was for noneconomic damages that are limited by the noneconomic-damages limitation contained in MCL 600.1483. Because an agreement between the parties is a contract, the majority is not free to alter its unambiguous terms by making such an assumption.[24]
For all the foregoing reasons, I respectfully dissent.

 See Maddux v Donaldson, 362 Mich 425, 432-434; 108 NW2d 33 (1961); Velez v Tuma, 283 Mich App 396, 409; 770 NW2d 89 (2009); Bell v Ren-Pharm, Inc, 269 Mich App 464, 471-472; 713 NW2d 285 (2006).

 Id.

 Kaiser v Allen, 480 Mich 31, 41; 746 NW2d 92 (2008) (Kelly, J., concurring).

 See Larabell v Schuknecht, 308 Mich 419, 423; 14 NW2d 50 (1944).

 Id.

 Kaiser, 480 Mich at 39-40.

 MCL 600.2956.

 See, for example, MCL 600.2956, which retains vicarious liability for employers, and MCL 257.401(1), which retains vicarious liability for vehicle owners.

 Kaiser, 480 Mich at 39-40 (citation omitted).

 Medical malpractice claims are bifurcated into two categories on the basis of whether the plaintiff is comparatively negligent. Under MCL 600.6304(6)(b), when a plaintiff is comparatively negligent, joint and several liability has been abolished, and the defendants’ liability is several. When a plaintiff is not comparatively negligent, joint and several liability is imposed under MCL 600.6304(6)(a).

 Kaiser, 480 Mich at 39-40.

 MCL 600.6305(1)(a) and (b).

 MCL 600.6305(1)(b).

 MCL 600.6306(1)(c).

 MCL 600.6303.

 MCL 600.6307.

 MCL 600.1483.

 MCL 600.6304(6)(b).

 As will be discussed, MCL 600.6305 requires damages to be separated into economic and noneconomic damages and, accordingly, only amounts paid for like damages should be set off.

 The limitations on damages contained in MCL 600.1483 are commonly referred to as “caps” on noneconomic damages.

 The full text of MCL 600.1483 provides:
(1) In an action for damages alleging medical malpractice by or against a person or party, the total amount of damages for noneconomic loss recoverable by all plaintiffs, resulting from the negligence of all defendants, shall not exceed $280,000.00 unless, as the result of the negligence of 1 or more of the defendants, 1 or more of the following exceptions apply as determined by the court pursuant to [MCL 600.6304], in which case damages for noneconomic loss shall not exceed $500,000.00:
(a) The plaintiff is hemiplegic, paraplegic, or quadriplegic resulting in a total permanent functional loss of 1 or more limbs caused by 1 or more of the following:
(i) Injury to the brain.
(ii) Injury to the spinal cord.
(b) The plaintiff has permanently impaired cognitive capacity rendering him or her incapable of making independent, responsible life decisions and permanently incapable of independently performing the activities of normal, daily living.
*36 (c) There has been permanent loss of or damage to a reproductive organ resulting in the inability to procreate.
(2) In awarding damages in an action alleging medical malpractice, the trier of fact shall itemize damages into damages for economic loss and damages for noneconomic loss.
(3) As used in this section, “noneconomic loss” means damages or loss due to pain, suffering, inconvenience, physical impairment, physical disfigurement, or other noneconomic loss.
(4) The state treasurer shall adjust the limitation on damages for noneconomic loss set forth in subsection (1) by an amount determined by the state treasurer at the end of each calendar year to reflect the cumulative annual percentage change in the consumer price index. As used in this subsection, “consumer price index” means the most comprehensive index of consumer prices available for this state from the bureau of labor statistics of the United States department of labor.

 Ante at 17-18.

 The jury verdict included a total of $124,831.86 in economic damages and a total of $1,400,000 in noneconomic damages. Economic damages were reduced pursuant to MCL 600.6304(3) to zero, because all economic damages had been paid by a collateral source. Noneconomic damages were reduced pursuant to MCL 600.6304(5) to the amount of the applicable limitation on damages, which at the time was $394,200. The final judgment totaled $649,655.59, which included the reduced verdict in the amount of $394,200, as well as $43,000 in taxable costs, $105,812.50 for attorney fees, and $106,643.09 in statutory interest covering the period up to the date of the judgment.

 Grosse Pointe Park v Mich Muni Liability & Prop Pool, 473 Mich 188, 198; 702 NW2d 106 (2005); Lintern v Mich Mut Liability Co, 328 Mich 1, 4; 43 NW2d 42 (1950).