# STATE OF MICHIGAN

# COURT OF APPEALS

CHELSIE BARKER, A Minor, by her Conservator
HOWARD LINDEN,

       Plaintiff-Appellee,

v

HUTZEL WOMEN'S HOSPITAL,

       Defendant-Appellant,

and

DETROIT MEDICAL CENTER/WAYNE STATE
UNIVERSITY,[1]

       Defendant.

UNPUBLISHED
December 8, 2015

No. 321857
Wayne Circuit Court
LC No. 07-729813-NH

Before: SAWYER, P.J., and K. F. KELLY and HOOD, JJ.

PER CURIAM.

Defendant, Hutzel Women's Hospital, appeals by leave granted an order denying its motion for setoff in this medical malpractice action brought by plaintiff, minor Chelsie Barker. We reverse.

## I. BASIC FACTS AND PROCEDURAL HISTORY[2]

In December of 1998, Chantrienes Barker, who was 36-weeks pregnant, was housed in the Wayne County Jail awaiting trial. On December 2, 1998, at 3:00 a.m., Barker experienced some abdominal discomfort and notified jail staff. She was advised that she had a regularly scheduled prenatal appointment later that morning. Barker agreed that she could wait until her appointment. She fell back to sleep and was annoyed when jail staff woke her to get ready for

---

[1] DMC/Wayne State was dismissed before trial.

[2] The voluminous record in this case includes, at least until now, 23 lower court files and thousands of pages of deposition and trial testimony. However, because the issue before us is primarily a legal one, we will not provide a lengthy recitation of the facts and evidence.

the appointment at defendant's facility. Records from the appointment indicated that Barker's cervix was closed and she was sent back to the jail.

Around dinnertime that same day, Barker did not feel well and notified jail personnel. Barker was taken to the jail's medical clinic where a physician noted that her cervix was now open and diagnosed her with preterm labor. Barker was taken back to defendant's facility at 9:30 p.m. where she was monitored for approximately two and a half hours. Records revealed that, upon initial exam, Barker was dilated to two centimeters, which did not change in the time she was there. Barker also experienced irregular contractions. Hospital personnel found the fetal monitoring strip to be reassuring and determined that, because there was no cervical change and no regular uterine contractions, Barker was not in active labor. She was sent back to jail at approximately 11:30 p.m., with standard instructions to return to the hospital if her contractions became more frequent, if her water broke, or if she began to bleed.

Shortly after her return to the jail, Barker's water broke and her labor pains intensified. The emergency call buttons in the cells did not work and, when neither Barker nor her cellmate could get the jail employees' attention, the entire cellblock began screaming and banging on toilets and cell bars on Barker's behalf. Once summoned, jail personnel told Barker to clean herself up and get dressed to go to the hospital. This, despite the fact that Barker's cellmate could observe the baby's head crowning. Barker was pushed into a wheelchair and taken to the hospital's medical clinic. Paramedics arrived shortly thereafter. Within minutes, at approximately 2:00 a.m. on December 3, 1998, plaintiff was delivered. Plaintiff was not breathing. EMS transported Barker and plaintiff to defendant hospital. Plaintiff had no respirations or heart rate when she arrived at the hospital. As a result of the distress and lack of medical care during labor and delivery, plaintiff has mental retardation and cerebral palsy.

Plaintiff filed a federal lawsuit against Wayne County and individual Wayne County employees in January of 2006, alleging an infringement of constitutional rights under 42 USC § 1983 and 1988 (federal claim) and gross negligence (state claim). The federal district court judge declined to exercise supplemental jurisdiction over plaintiff's state claim, dismissing the state claim without prejudice and retaining plaintiff's federal claim. *Havard ex rel Barker v Co of Wayne*, No. CIV. 06-10449, 2006 WL 305723, at *1 (ED Mich, 2006).

Plaintiff filed a separate complaint in the circuit court against Wayne County and individual Wayne County Jail personnel and nurses in 2006 (WCCC Docket No. 06-614793-NO), alleging a single count: gross negligence, intentional, willful, reckless and wanton misconduct. Plaintiff later filed the instant suit in Wayne Circuit Court alleging medical malpractice against defendant and several individual healthcare providers.

In the federal case, the federal district court judge denied the Wayne County defendants' motion for judgment on the pleadings.[3] It noted:

> In the present case, the complaint alleges facts that could be construed to constitute deliberate indifference to Chelsie's serious medical needs. The complaint alleges that the infant's mother was in active labor, crying out for help, to the knowledge of the defendants, and was left by the defendants in her cell for two hours; that the paramedics did not arrive until the infant was being delivered and did not have the equipment to resuscitate the child when she was delivered; and that all of this resulted in severe injuries to the infant. These facts establish both the objective and subjective components of the test. Thus, the allegations establish a violation of a constitutional right.
>
> ***
>
> Here, a reasonable person in the position of the defendants would have understood the risk that an infant born in the Wayne County Jail away from the attention of medical personnel would have serious medical needs, and should have anticipated those needs. For these reasons, the Court finds that the defendants are not entitled to qualified immunity at this stage of the proceedings. [*Havard v Puntuer*, 600 F Supp 2d 845, 859-860 (ED Mich 2009).]

In affirming the federal court's ruling, the Sixth Circuit also noted:

> Despite their knowledge that Chantrienes Barker was at least seven months pregnant, that as of 3:00 a.m. on December 2 she was complaining of labor pains, that after 9:30 p.m. on December 2 she was dilated at 2 centimeters, and that at 1:30 a.m. on December 3 she was having contraction[s], and specifically told Defendants that the baby was "coming out," and that the Wayne County Jail was wholly unequipped to handle the delivery of a baby, Defendants did not take her back to Hutzel Hospital but merely called EMS instead. Moreover, Defendants did nothing in the twenty-seven minutes it took for EMS to arrive. Rather than rushing Chantrienes back to the hospital, Defendants simply waited for another entity which was not equipped to handle childbirth (much less a child born cyanotic). The subjective component of deliberate indifference is satisfied.
>
> ***
>
> In sum, we conclude that Chelsie stated a cognizable constitutional claim based on Defendants' deliberate indifference to her serious medical needs.

---

[3] Defendants argued, inter alia, that Chelsie was a fetus and not a "person" within the meaning of the Fourteenth Amendment, US Const Amend XIV, and that the jail personnel were entitled to qualified immunity.

***

This case presents a situation where the medical need was blatantly obvious and the medical risks were great. It takes very little foresight to anticipate that a baby will appear soon after labor begins. Holding that Defendants were required to respond to that medical need does not impose a duty on them beyond what the law already clearly establishes: prison officials cannot deliberately ignore the obvious and serious medical needs of those within—or imminently to be within—their custody. [*Havard v Wayne Co*, 436 Fed Appx 451, 455-456 (CA 6 2011).]

In December 2012, plaintiff and Wayne County settled the state and federal lawsuits for $8 million. The settlement provides, in relevant part:

**ORDER**

**NOW THEREFORE, IT IS HEREBY ORDERED** that the settlement proposed by the parties, and provided to this Court is hereby approved.

**IT IS FURTHER ORDERED** the settlement is against Defendant CHARTER COUNTY OF WAYNE (a/k/a THE COUNTY OF WAYNE, WAYNE COUNTY, THE WAYNE COUNTY COMMISSION and/or WAYNE COUNTY JAIL) only for an alleged *Monell* [*v New York City Dep't of Social Services*, 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978)] violation and any other construed allegation(s) against the CHARTER COUNTY OF WAYNE (a/k/a THE COUNTY OF WAYNE, WAYNE COUNTY, THE WAYNE COUNTY COMMISSION and/or WAYNE COUNTY JAIL are dismissed as well.

**IT IS FURTHER ORDERED** that the Plaintiff shall dismiss with prejudice the individual Defendants (Deputy Diane Christensen, Deputy John Primeau, Deputy K. Cline, Sergeant Arney, Nurse Dothard, Nurse Peoples, Nurse Simpson, and Christine Frazier, R.N.).

**IT IS FURTHER ORDERED** the individual Defendants (Deputy Diane Christensen, Deputy John Primeau, Deputy K. Cline, Sergeant Arney, Nurse Dothard, Nurse Peoples, Nurse Simpson, and Christine Frazier, R.N.) and Defendant Wayne County will be dismissed with prejudice in the Wayne County Circuit case (Case No. 07-729813-NH) in exchange for a dismissal of the Appeal (Case No. 301222).

In the state action, defendant had filed notices of nonparty fault, claiming that the actions of the Wayne County defendants and the emergency medical technicians were the actual proximate cause of plaintiff's injuries. The individual defendants were dismissed from the action. The case against defendant, only, went to trial before a jury in March 2014. Plaintiff argued that defendant was negligent in failing to recognize that Barker was in active preterm labor and in discharging Barker when she was nearing delivery. Plaintiff conceded that her

-4-

injuries occurred as a result of a hypoxic-ischemic encephalopathy, meaning that plaintiff was deprived of oxygen and blood flow during labor and delivery, and that the delivery occurred at the jail. Nevertheless, plaintiff argued that defendant placed her in danger when it sent Barker back to jail.

The jury found in favor of plaintiff, apportioning fault as follows: 60 percent attributed to defendant, 30 percent attributed to the jailhouse nurse who initially responded to Barker's jail cell, five percent attributed to the jail deputy who failed to summon help in a timely manner, and five percent attributed to the jailhouse nurse who watched Barker in the jail's medical clinic while waiting for emergency personnel. As a result of that verdict, plaintiff submitted a proposed judgment of over $6.1 million and also requested case evaluation sanctions.

In response, defendant moved for a setoff, arguing that plaintiff asserted successive negligent acts by the Wayne County defendants and the negligence produced a single, indivisible injury. Defendant pointed out that the Wayne County defendants previously settled the action, including the tort claims against the individual jail personnel in state court. Defendant argued that plaintiff is entitled to only one recovery for the single injury. Therefore, defendant contended that it was entitled to common law setoff because it was considered jointly and severally liable for the injury under the law. Where plaintiff settled both her state tort claims, not only her federal claims under *Monell*[4] she is permitted only one recovery for a single, indivisible injury.

Plaintiff responded that she settled only her *Monell* violation with Wayne County. *Monell* claims by their nature are not joint and several; each defendant must be personally involved in the alleged unconstitutional activity. Plaintiff pointed out that Wayne County was never a codefendant in the instant malpractice case in state court, and that the federal court case did not involve medical malpractice. According to plaintiff, Wayne County was never jointly liable for damages attributable to defendant Hutzel.

At the April 24, 2014 hearing on defendant's motion for a setoff, the trial court noted:

> We can have this great intellectual conversation for a long time. And somebody, and, I better bite my tongue, about where it's going from here, but somebody else is going to decide this case I'm sure somewhere along the line.
>
> Look, I read the statute differently than you do. I think if a plaintiff is determined to be without fault, under subsection one or two, the liability of the defendant is joint and several, whether or not the defendant is a person, or whether or not the defendant is an entity under 5831. I read it to mean that under those circumstances, where the, where it's entirely a medical malpractice case,

---

[4] In *Monell*, the United States Supreme Court held that municipalities are not wholly immune from suit under 42 USC 1983 and that a local government unit may be liable when the execution of its policy or custom inflicts the injury.

and that there's multiple defendants and they're either entities or individuals, that there is a set off.

In this case, we have someone outside the scope of medical malpractice and based on my, probably inartfully drafted hypothetical question here,[5] and given the concepts and the goal of not overpaying somebody, but I don't think it's necessary, it necessarily means that you should under pay them for a judgment and taking cap setoffs against another verdict, I think is, is, not contemplated in a verdict in the case of this nature.

So for those reasons, I'm going to deny the motion to apply the set off in this case.

The trial court entered a judgment against defendant on May 1, 2014, along with a separate order denying setoff.

Defendant filed its emergency application for leave to appeal on May 20, 2014. Plaintiff filed a motion to dismiss, arguing that defendant had not shown that it is entitled to interlocutory appellate intervention. We granted defendant's application for leave to appeal and denied plaintiff's motion to dismiss. *Barker v Hutzel Women's Hospital*, unpublished order of the Court of Appeals, entered July 22, 2014 (Docket No. 321857). We also granted plaintiff's motion to stay, which prevented the trial court from considering and deciding defendant's motion for judgment notwithstanding the verdict, plaintiff's motion for additur, and plaintiff's motion for case evaluation sanctions. *Barker v Hutzel Women's Hospital*, unpublished order of the Court of Appeals, entered August 18, 2014 (Docket No. 321857) recon den *Barker v Hutzel Women's Hospital*, unpublished order of the Court of Appeals, entered August 27, 2014 (Docket No. 321857), lv den *Linden v Hutzel Women's Hospital*, 497 Mich 871 (2014).

## II. ANALYSIS

Defendant argues common-law setoff applies in this medical malpractice action where joint and several liability exists for plaintiff's single indivisible injury. Defendant maintains that the successive actions of the Wayne County defendants produced plaintiff's brain injury and that all defendants are considered jointly and severally liable to plaintiff. Defendant states that, absent a setoff, plaintiff will be compensated twice for her injury. We agree.

### A. STANDARD OF REVIEW

---

[5] The trial court had asked defense counsel this question: "A person injures their right leg. They go to a hospital. The doctor cuts off the left leg. The doctor is an independent doctor. Who is uninsured. The auto company has a 3 million-dollar policy. 2 million of it is for pain and suffering. 1 million of it for economic damages. What's your verdict? . . . Does the auto company get the set off on the verdict?" Counsel answered affirmatively "because there's a medical malpractice claim in there."

"Whether the jury award in this case is subject to a setoff for the earlier settlement of a codefendant is a purely legal question that is reviewed de novo by this Court. Questions of statutory interpretation are also reviewed de novo." *Kaiser v Allen*, 480 Mich 31, 35; 746 NW 2d 92 (2008) (internal citation omitted).

> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to ascertain and give effect to the intent of the Legislature. We begin this analysis by examining the language of the statute itself, as this is the most reliable evidence of that intent. If the language of a statute is clear and unambiguous, we presume that the Legislature intended the meaning clearly expressed. Accordingly, the statute must be enforced as written and no further judicial construction is permitted. [*Gardner v Dep't of Treasury*, 498 Mich 1, 5-6; 869 NW2d 199 (2015) (internal footnotes omitted).]

## B. THE LAW ON JOINT AND SEVERAL LIABILITY IN MEDICAL MALPRACTICE ACTIONS

Prior to its amendment in 1995, MCL 600.2925d provided:

> When a release or a covenant not to sue or not to enforce a judgment is given in good faith to 1 or 2 or more persons liable in tort for the same injury or the same wrongful death:

> (a) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide.

> (b) It reduces the claim against the other tort-feasors to the extent of any amount stipulated by the release or the covenant or to the extent of the amount of the consideration paid for it, whichever amount is the greater.

> (c) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

MCL 600.2925d(b) codified the common-law setoff rule. *Velez v Tuma*, 492 Mich 1, 11; 821 NW2d 432 (2012); *Markley v Oak Health Care Investors of Coldwater, Inc*, 255 Mich App 245, 255; 660 NW2d 344 (2003). However, the section was deleted as part of the 1995 tort reform legislation "because the tort reform legislation, for the most part, abolished joint and several liability in favor of allocation of fault or several liability." *Markley*, 255 Mich App at 255.

MCL 600.2956 now provides, in relevant part: "Except as provided in section 6304, in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each defendant for damages is several only and is not joint." This change reflected the legislature's desire to enact "substantive changes to the law of torts by altering the balance of two competing principles: the principle that every person injured by another person or persons has the right to be fully compensated for the harm, and the principle that those who cause a particular harm should only be responsible for his or her share in producing the harm." *Taylor v Michigan Petroleum Technologies, Inc*, 307 Mich App 189, 196;

859 NW2d 715 (2014).  However, under MCL 600.6304(6), medical malpractice cases are an exception:

> (6) If an action includes a medical malpractice claim against a person or entity described in section 5838a(1)[6], 1 of the following applies:
>
> (a) If the plaintiff is determined to be without fault under subsections (1) and (2), the liability of each defendant is joint and several, whether or not the defendant is a person or entity described in section 5838a(1).  [MCL 600.6304(1)-(6) (internal footnotes omitted).]

Case law explains how common-law setoff has been affected by tort reform.  In *Markley v Oak Health Care Investors of Coldwater* (Oak Health), the plaintiff's decedent was misdiagnosed at Community Health Center, resulting in a large bowel resection and leg amputation.  She was later released to go home, but was ultimately moved to a nursing home run by Oak Health.  A nurse practitioner at Oak Health caused the decedent to go into respiratory distress and she died.  *Markley*, 255 Mich App at 247-248.  The plaintiff sued Community Health for wrongful death and ultimately settled.  However, before the settlement was reached, the plaintiff also sued Oak Health for wrongful death.  Oak Health failed to answer and the plaintiff was granted partial summary disposition.  The only issue before the jury was the amount of the plaintiff's damages.  *Id.* at 248.  The trial court declined Oak Health's request for a setoff, finding that the common-law right to a setoff had been abrogated by the 1995 tort reform.  *Id.* at 249.

In reversing the trial court, our Court in *Markley* expressly held that the common-law rule of setoff survived the 1995 tort reform legislation in situations where joint and several liability applied.  *Id.* at 256-257.  We explained:

> Under the current statutory scheme, MCL 600.2956 abolished joint liability in most circumstances.  However, joint and several liability still exists in medical malpractice cases where the plaintiff is without fault, such as the present case.
>
> Under established principles of joint and several liability, where the negligence of two or more persons produces a single, indivisible injury, the

---

[6] MCL 600.5838a(1) provides: "For purposes of this act, a claim based on the medical malpractice of a person or entity who is or who holds himself or herself out to be a licensed health care professional, licensed health facility or agency, or an employee or agent of a licensed health facility or agency who is engaging in or otherwise assisting in medical care and treatment, whether or not the licensed health care professional, licensed health facility or agency, or their employee or agent is engaged in the practice of the health profession in a sole proprietorship, partnership, professional corporation, or other business entity, accrues at the time of the act or omission that is the basis for the claim of medical malpractice, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim."

> tortfeasors are jointly and severally liable despite there being no common duty, common design, or concert of action. Here, with regard to wrongful death, Community and [Oak Health], through successive negligent acts, produced a single, indivisible injury, i.e., the death of plaintiff's decedent. Although plaintiff filed separate lawsuits, Community and defendants are in theory jointly and severally liable for wrongful death, and we shall treat them as such, otherwise a plaintiff in a similar situation could avoid the effect of our ruling today by simply suing joint tortfeasors in separate actions. We shall effectively treat defendants as if they had been sued jointly with Community by plaintiff in a single action. [*Id.* at 251-52 (internal citations and footnote omitted).]

The result is that plaintiff would have the right to recover the full amount from Oak Health, even if it meant that Oak Health had to pay more than its fair share. *Id.* at 253.

In finding that the common-law rule of setoff remained intact, the *Markley* Court affirmed the principle that a plaintiff is entitled to only one recovery for a single injury, even when there is joint and several liability and even when a defendant is forced to pay more than its fair share. *Id.* at 250-251.

> [W]e conclude that the Legislature did not intend to allow recovery greater than the actual loss in joint and several liability cases when it deleted the relevant portion of § 2925d, but instead intended that common-law principles limiting a recovery to the actual loss would remain intact.
>
> Here, a jury determined that plaintiff was entitled to $300,000 in total damages for wrongful death; however, plaintiff already received $220,000 for wrongful death. Without reduction of the jury verdict, plaintiff receives $520,000 in compensation for a $300,000 harm. If we were to allow such a recovery, we would defeat the principle underlying common-law setoff, that being that a plaintiff can have but one recovery for an injury. We find that the principle of one recovery and the common-law rule of setoff, in the context of joint and several liability cases, continue to be the law in Michigan. [*Id.* at 257 (internal footnote omitted).]

Our Supreme Court affirmed *Markley* in *Velez v Tuma*. In *Velez*, the plaintiff sued two hospitals and other healthcare providers, alleging that their combined medical malpractice resulted in the amputation of her leg. The hospitals settled and the complaint was dismissed without prejudice. The plaintiff then filed a separate suit against one of the doctors and the matter went to jury, resulting in a significant verdict in the plaintiff's favor. The trial court declined the defendant's request to apply the noneconomic damages cap to the jury's verdict and then subtract the codefendants' settlement as setoff from the final judgment; instead, it applied the setoff to the jury's uncapped award. *Velez*, 492 Mich at 6-7.

Like the *Markley* Court, the *Velez* Court concluded that tort reform did not do away with the common law setoff rule. *Id.* at 16. It explained that, in general, "[b]ecause a system of several liability already incorporates the fault of *all* tortfeasors in establishing every individual tortfeasor's proportion of fault, there is no danger that the plaintiff will be overcompensated for

the injury by the failure to set off the amount of another tortfeasor's settlement." *Id.* at 12. By specifically retaining joint and several liability in the context of medical malpractice claims, the legislature clearly intended to retain the common law setoff rule. *Id.* at 13. The Court explained:

> Inherent in the meaning of joint and several liability is the concept that a plaintiff's recovery is limited to one compensation for the single injury. Because in some instances a jointly and severally liable tortfeasor settles before trial, the common-law setoff rule is necessary to ensure that the plaintiff does not recover more than a single recovery for the single injury. The common-law setoff rule entitles the remaining tortfeasors, who are still liable for the *entire* injury, to set off the amount of the cotortfeasor's settlement from any verdict rendered against them. By reiterating that liability in most medical malpractice cases is joint and several, the Legislature thus retained the common-law setoff rule. When understood in this way, the purpose of the Legislature's repeal of the statutory setoff was not to abrogate the common-law setoff rule, but to acknowledge that a setoff does not apply in actions that involve several liability only. [*Id.* at 13-14 (internal footnotes omitted).]

The *Velez* Court further stressed the need to restrict a plaintiff's ultimate recovery to comply with what the law permitted. Therefore, any setoff must be applied to ensure "that the plaintiff does not recover an amount more than that which the Legislature has fixed by statute." *Id.* at 20. To that end, a trial court must "first apply to the jury's verdict the noneconomic damages cap, as well as any other statutorily required adjustments, before reducing the award by the amount of the codefendant's settlement." *Id.* at 23. The Court concluded that "[b]ecause plaintiff has already received partial compensation for that injury, application of the common-law setoff rule requires that codefendants' settlement be subtracted from the final judgment so that plaintiff does not receive more than a single recovery for her single injury." *Id.*

In *Greer v Advantage Health,* 305 Mich App 192; 852 NW2d 198, app gtd 497 Mich 920 (2014), the "[p]laintiffs asserted joint and several claims of negligence against all defendants attending Elizabeth Greer during the delivery of Makenzie, which resulted in injury to both Elizabeth (ruptured uterus) and Makenzie (hypoxic brain injury, respiratory depression, metabolic acidosis, permanent brain damage, and blindness). Before trial, defendant St. Mary's Hospital settled all plaintiffs' claims, including those of Elizabeth's husband, Kenneth Greer, for $600,000. The settlement did not differentiate between plaintiffs' claims for damages that included the personal injuries of Elizabeth and Makenzie and Kenneth's claims for Makenzie's medical expenses and loss of consortium." *Greer,* 305 Mich App at 196 (internal footnote omitted). The jury found no cause of action as to Elizabeth's and Kenneth's claims, but awarded substantial damages for Makenzie. The defendants moved for a setoff of the entire amount that St. Mary's had paid in the previous settlement. The trial court declined to setoff the full amount because the settlement was for all three plaintiffs and, therefore, it would have been unfair to Makenzie to offset the full amount. *Id.* at 196-198.

The Court in *Greer* concluded that, in keeping with *Velez,* the trial court should have applied the full setoff amount "because the $600,000 St. Mary's Hospital paid to *all* plaintiffs to settle *all* plaintiffs' claims arising out of the alleged malpractice of the codefendants attending to the birth of Makenzie must reduce *pro tanto* the amount of the jury verdict, after any statutory

reductions against the jointly liable defendants regarding *all* plaintiffs' identical malpractice claims. *Id.* at 200 (internal citation omitted). And, "[b]y assigning 1/3 of the St. Mary's settlement to each plaintiff's claims, the trial court failed to fully apply the principle of setoff that for one injury there may be a single recovery." *Id.* at 203. The Court explained:

> Plaintiffs brought their complaint against all defendants alleging a single count of malpractice concerning a single discrete incident, the birth of Makenzie. Because any liability of defendants was joint and several, plaintiffs were free to settle with some defendants and proceed to trial against other defendants. But for a single injury, plaintiffs could have only one recovery. Plaintiffs might have been able, with St. Mary's agreement, to apportion the settlement among plaintiffs' separate claims. Plaintiffs here did not do so. Plaintiffs collectively settled *all* their claims against a jointly liable tortfeasor arising out of a single instance of malpractice involving Makenzie's birth for a single undifferentiated lump sum of $600,000. After trial against the nonsettling defendants on all the same claims, a jury determined the value of all plaintiffs' claims. To ensure that plaintiffs are fully but not overly compensated for *all* their claims, the entire St. Mary's settlement must be offset against the amount the jury determined represented plaintiffs' collective damages. When there is a recovery "for an injury identical in nature, time and place, that recovery must be deducted from [the plaintiffs'] other award." *Great Northern Packaging, Inc v Gen Tire & Rubber Co,* 154 Mich App 777, 781, 399 NW2d 408 (1986).

> This reasoning is reinforced by our Supreme Court's decision in *Velez,* which noted that "[t]he term 'joint and several' liability, as used in MCL 600.6304(6)(a), is a technical legal term." It means when multiple tortfeasors cause " 'a *single or indivisible injury,* the injured party [may] either sue all tortfeasors jointly or he [may] sue any individual tortfeasor severally, and each individual tortfeasor [is] liable for the entire judgment....' " *Id.* (citation omitted; alterations in original; emphasis added). In the context of the Court's discussion of the interplay between common-law setoff and statutory limitations on damages in medical malpractices cases, it is clear that the "single or indivisible injury" referred to is the allegation of malpractice. The damages flowing from the single injury—the malpractice—may be economic or noneconomic, past or future. "Inherent in the meaning of joint and several liability is the concept that a plaintiff's recovery is limited to one compensation for the single injury." *Velez,* 492 Mich at 13. Because in this case Makenzie had already received partial compensation for her malpractice injury, "application of the common-law setoff rule requires that codefendants' settlement be subtracted from the final judgment so that [she] does not receive more than a single recovery for her single injury." *Id.* at 23. [*Greer,* 305 Mich App at 203-04 (some internal citations omitted).]

But what about a situation where the multiple tortfeasors are not all medical agencies or practitioners? At issue in *Bell v Ren-Pharm,* 269 Mich App 464; 713 NW2d 285 (2006) was "whether the joint and several liability of a defendant under the tort reform statute, MCL 600.6304(6)(a), extends to damages attributable to the fault of a named nonparty." *Bell,* 269 Mich App at 465. In that case, the plaintiff was burned after his grandmother applied an

-11-

ointment supplied by the defendants. The plaintiff sued defendants, but not the grandmother. Defendants named the grandmother as a nonparty at fault. A jury ultimately determined that the defendants were 20 percent at fault and the grandmother was 80 percent at fault. In spite of the defendants' arguments to the contrary, the trial court concluded that the defendants were jointly and severally liability for the damages attributable to the grandmother's fault. *Id.* at 465-466.

This Court affirmed and rejected each of the parties' arguments:

> Defendants argue that, because this phrase ["the liability of each defendant is joint and several"] only mentions "each defendant," its plain meaning is that defendants are jointly and severally liable only for damages arising from the fault of other defendants, not at-fault nonparties. Defendants argue that, had the Legislature wanted the liability to extend to such nonparties, the statute would have been drafted to say "the liability of each defendant and nonparty is joint and several." To the contrary, plaintiffs argue that the statute clearly makes each defendant jointly and severally liable for all damages, including those attributable to the fault of a nonparty. We conclude that both of these arguments are wrong; the statute is simply silent on the question presented. [*Id.* at 467.]

The *Bell* Court then went on to consider "general principles of joint and several liability" because where "the tort reform act is silent on the question presented, it is logical to assume that the Legislature intended the question would be resolved using generally applicable principles of joint and several liability, as long as those principles do not conflict with current statutes." *Id.* at 468-469.

The Court quoted Restatement Torts, 3d, Apportionment of Liability, §A18,p 160: "'If the independent tortious conduct of two or more persons is a legal cause of an indivisible injury, each person is jointly and severally liable for the recoverable damages caused by the tortious conduct.'" *Bell*, 269 Mich App at 469. It noted that the definition did not limit application of joint and several liability to just the "parties" in an action. As a consequence to joint and several liability, the burden of seeking contribution from other responsible persons is on the defendants, not the plaintiff. "In other words, a defendant is liable for 'all damages,' even those arising from the fault of 'other potentially responsible persons,' and even if they have not been named as parties in a tort action." *Id.* at 469-470. This is in keeping with the recognized purpose of the joint and several liability rule – "to place the burden of injustice, if injustice is inevitable, on the wrongdoer instead of on the innocent plaintiff." *Id.* at 471. And "while there may be some injustice in holding an at-fault defendant jointly and severally liable for damages attributable to some other person's fault, it would be more unjust to leave an innocent plaintiff with only a partial recovery of damages if the other person cannot be effectively pursued." *Id.* at 471-472. Therefore, the "underlying purpose of joint and several liability extends even to damages caused by the fault of a person not a party to an action." *Id.* at 472.

## C. APPLICATION OF THE LAW

The common-law rule of setoff applies where there is joint and several liability, wherein each party is liable for the entire judgment and plaintiff has suffered a single, indivisible injury. Plaintiff writes that "in order for joint and several liability to exist, plaintiff must have the ability

to pursue each liable party for the entire obligation, regardless of the apportionment of fault among the defendants. Here, plaintiff never had the right to pursue Defendant Hospital for Wayne County's constitutionally tortious conduct and, reciprocally, Wayne County could never pursue Defendant Hospital for contribution or indemnity." This argument erroneously focuses on whether Hutzel could have been jointly and severally liable for the Wayne County defendants' alleged § 1983 violations where the sole inquiry under MCL 600.6304(6) is whether the action includes a medical malpractice claim and whether plaintiff is without fault. If the answer is affirmative as to both, then joint and several liability applies. "The action" at issue here is plaintiff's medical malpractice claims against Hutzel. "The action" is not referring to plaintiff's previous claims against the Wayne County defendants in federal court. Therefore, it is irrelevant that Wayne County was never joined in plaintiff's medical malpractice claim against Hutzel.

Moreover, plaintiff mistakenly focuses on the particular causes of action in the federal and state courts by arguing that "a violation of a constitutional right is fundamentally different than an ordinary tort." True, plaintiff's federal action involved a § 1983 constitutional claim that her civil rights were violated while her state claim sounded entirely in medical malpractice, but the focus for determining whether joint and several liability applies is not on the causes of action or the potential range of damages for each; instead, the focus is on the injury for which plaintiff seeks compensation. "The common-law setoff rule is based on the principle that a plaintiff is only entitled to one full recovery for the same injury. An injured party has the right to pursue multiple tortfeasors jointly and severally and recover separate judgments; however, a single injury can lead to only a single compensation." *Kaiser*, 480 Mich at 39. "Generally, under Michigan law, only one recovery is allowed for an injury. To determine whether a double recovery has occurred, this Court must ascertain what injury is sought to be compensated. Thus, where a recovery is obtained for any injury identical with another in nature, time, and place, that recovery must be deducted from the plaintiff's other award." *Grace v Grace*, 253 Mich App 357, 368-69; 655 NW2d 595 (2002). *Markley* instructs that successive negligent acts that are not necessarily temporal may nevertheless produce a single, indivisible injury. It further instructs that a plaintiff is only entitled to one recovery for such an injury and that a court will overlook procedural gamesmanship by considering multiple tortfeasors to have been jointly sued in a single action.

Here, defendant's alleged professional malpractice coupled with the Wayne County violation of plaintiff's constitutional rights resulted in one indivisible injury – plaintiff's hypoxic-ischemic traumatic brain damage. The jury concluded that plaintiff was entitled to past economic damages, future economic damages for lost earning capacity and medical care, and future non-economic damages and the trial court entered a judgment in plaintiff's favor in the amount of $6,119,775. This amount reflects the jury's determination that plaintiff was entitled to compensation for her traumatic brain injury. Because plaintiff is entitled to only one recovery

for a single injury and she previously received over $8 million dollars in the settlement with other tortfeasors, defendant is entitled to a setoff of the entire amount.[7]

Reversed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Kirsten Frank Kelly

---

[7] The parties each spent a great deal of energy arguing whether the settlement included only plaintiff's *Monell* claims against Wayne County. We find no reason to specifically discuss the terms of the settlement, especially in light of the fact that case law clearly provides that joint and several liability applies even in situations where there is a nonparty tortfeasor. See *Bell,* 269 Mich App 464. Thus, even if the settlement included only plaintiff's *Monell* claims against Wayne County and not its individual employees, it has no bearing on the issue of joint and several liability.